**Susan Orlansky, ABA 8106042**
**Reeves Amodio LLC**
**1057 W. Fireweed La., Suite 207**
**Anchorage, AK 99503**
**Telephone: +1.907.952.1668**
**Email: susano@reevesamodio.com**
**Attorney for Plaintiffs Native Village of Unalakleet and Native Village of Elim**

**Jason R. Scherr,** *Applying for Pro Hac Vice Admission*
**Morgan, Lewis & Bockius LLP**
**1111 Pennsylvania Avenue, NW**
**Washington, DC 20004**
**Telephone: +1.202.739.3000**
**Email: jr.scherr@morganlewis.com**
**Attorney for Plaintiffs Native Village of Unalakleet and Native Village of Elim**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIVE VILLAGE OF UNALAKLEET, and NATIVE VILLAGE OF ELIM<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE'S RURAL UTILITIES SERVICE and ANDREW BERKE in his official capacity as Administrator of the Rural Utilities Service<br><br>Defendants. | Civil Action No. 3:24-cv-00100 |

## (5 U.S.C. § 551 *et seq.*) VERIFIED COMPLAINT

Plaintiffs the Native Village of Unalakleet ("Unalakleet") and the Native Village of

Elim ("Elim") by and through their undersigned counsel allege as follows:

1

## NATURE OF ACTION

1.     This is an action for injunctive relief to remedy government action in derogation of the federally recognized rights of sovereign Indian Tribe plaintiffs.

2.     Plaintiffs Unalakleet and Elim are federally recognized Tribes in Alaska, occupying Tribal Lands.

3.     The United States Department of Agriculture's ("USDA") Rural Utilities Service ("RUS") administers federal funding to broadband service providers through the Rural eConnectivity Loan and Grant Program ("ReConnect Program").

4.     The ReConnect Program furnishes loans and grants to provide funds for the costs of construction, improvement, or acquisition of facilities and equipment needed to provide broadband service in eligible rural areas, including a specific category for Alaska Native Corporations, Tribal Governments, and related Native communities.

5.     As a condition of awarding any funds to applicants for grants or loans under the ReConnect Program, federal regulations mandate that any applicant seeking funding to construct broadband service infrastructure over Tribal Lands must obtain a "Tribal Government Resolution of Consent from the Tribal Council of the Tribal Government with jurisdiction over the Tribal Lands at issue." 7 C.F.R. § 1740.60(c)(19).

6.     In Round Four of the ReConnect Program that occurred during fiscal year 2023, Defendant RUS granted applications by non-party Interior Telephone Company ("Interior") and non-party Mukluk Telephone Company ("Mukluk"), awarding a combined $69,982,995 in "100% Grant" funding for each to "deploy a fiber-to-the-premises network

to provide high-speed internet" to benefit individuals and businesses in the Nome Census Area in Alaska.[1]

7.     Upon awarding the Interior and Mukluk grants, RUS designated the Tribal Lands at issue as having been "served"—i.e., they are no longer considered unserved areas for broadband, and are thus not eligible for future federal funding.

8.     Prior to RUS approving their applications and granting federal funding awards under Round Four of the ReConnect Program, neither Interior nor Mukluk obtained and submitted to the government a Resolution of Tribal Consent corresponding to Tribal Lands of Tribes within the Nome Census Area in Alaska, including Unalakleet and Elim.

9.     RUS disregarded applicable regulations when giving away to Interior and Mukluk some $70 million of federal grant funding earmarked for the benefit of Tribes like Unalakleet and Elim, but against the will of these Tribes as determined by the absence of a Resolution of Tribal consent.  RUS thus acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.

10.    Neither Interior nor Mukluk has yet begun any work on the projects described by their applications.  Tribes including Unalakleet and Elim are injured by the lost benefit of the broadband infrastructure development funds intended for their benefit, and by being designated as "served" when they are not.

---

[1] *ReConnect Program FY 2023 Funding Opportunity Announcement Awardees*, U.S. Department of Agriculture, https://www.usda.gov/reconnect/round-four-awardees.

11.     Plaintiffs bring this action pursuant to 5 U.S.C. § 702 against Defendants for their violation of the APA.

## PARTIES

12.     Plaintiff Unalakleet is a federally recognized Tribe located on the Norton Sound at the mouth of the Unalakleet River in Alaska.[2]

13.     Plaintiff Elim is a federally recognized Tribe located on the northwest shore of Norton Bay on the Seward Peninsula in Alaska.[3]

14.     Defendant USDA's RUS is an agency of the United States Government, with its headquarters and principal place of business located at 1400 Independence Avenue, S.W., Washington, D.C. 20250.  The purpose of RUS is to provide infrastructure, including telecommunications-related infrastructure, to rural communities throughout the United States, and specifically including Native Lands in Alaska.

15.     Defendant Andrew Berke is the Administrator of RUS.  He is named in his official capacity.   Berke maintains an office at 1400 Independence Avenue, S.W., Washington, D.C. 20250.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 706 because this action arises under the APA, 5. U.S.C. § 551 *et seq.*

---

[2] 89 Fed. Reg. 944, 947; *see Unalakleet*, Kawerak, Inc., https://kawerak.org/our-region/unalakleet/.

[3] 89 Fed. Reg. 944, 947; *see Elim*, Kawerak, Inc., https://kawerak.org/our-region/elim/.

17.     This Court has personal jurisdiction over Defendants pursuant to AS 09.05.015, as each Defendant has caused injuries to Plaintiffs through their acts and omissions in Alaska.  Defendants have established sufficient minimum contacts with Alaska by administering funding to broadband service providers through the ReConnect Program to construct broadband service infrastructure in Alaska.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiffs Unalakleet and Elim reside in Alaska.

## FACTUAL ALLEGATIONS

### A.     The ReConnect Program and USDA's Regulations

19.     The ReConnect Program, administered by RUS, "provides funding in the form of loans, grants, and loan/grant combinations for the costs of construction, improvement, or acquisition of facilities and equipment needed to facilitate broadband deployment in rural areas."[4]

20.     According to the USDA's regulations pertaining to the ReConnect Program, "If service is being proposed on or over Tribal Land, a Government Resolution of Consent from the Tribal Council of the Tribal Government with jurisdiction over the Tribal Lands at issue must be provided to show that they are in support of the project and will allow

---

[4] 7 C.F.R. § 1740.1.

construction to take place on Tribal Land."[5]  Applicable Tribal consent is necessary for a

ReConnect Program application to be considered complete.[6]

21.    Federal regulations at 7 C.F.R. § 1740.60(c)(19) set out specific minimum

requirements for certification of a Resolution of Tribal consent.

22.    According to the USDA's Notice of Funding Opportunity—the mechanism

by which applications are solicited for RUS loan and grant awards—"[a]ny applicant that

fails to provide a certification to provide service on the Tribal Lands identified in the

[Proposed Funded Service Area] will not be considered for funding."[7]

23.    The regulations' requirement of Tribal consent enables Tribal communities

to participate in decisions that impact the land within their jurisdictional control.  This

requirement was specifically adopted based upon feedback gathered by the USDA's Office

of Tribal Relations and Rural Development from Tribal leaders.[8]

24.    The USDA's online application and webinar materials for Round Four of the

ReConnect Program emphasize the need for Program applicants to obtain Tribal consent,

expressing that it is "[v]ital to coordinate with Tribes early in the application process in

order to ensure ample time to obtain the appropriate tribal certification."[9]

---

[5] 7 C.F.R. § 1740.60(c)(19).

[6] 7 C.F.R. § 1740.60(c).

[7] 88 Fed. Reg. 16579, 16581.

[8] 88 Fed. Reg. 5724, 5726.

[9] *Preparing for ReConnect Round 4*, USDA Rural Development,
    https://www.rd.usda.gov/sites/default/files/Preparing-for-ReConnect-Round-4.pdf.

25.     There is no ambiguity about the mandatory nature of the Tribal consent requirement.   In its instructions to contractors interpreting applicable regulations in connection with Round Five (2024 funding), USDA not only reinforces the need for ample time to obtain Tribal certification, but reaffirms that "[a]ny application that does not provide a certification to provide service on the [T]ribal lands identified in the PFS will not be considered for funding."[10]

26.     Particularly relevant here, regulations pertaining to the ReConnect Program state that "RUS will not fund more than one project that serves any one given geographic area."[11]  For that reason, the issuance of any award—whether proper or not—has the effect of precluding the Tribal Lands at issue from obtaining the benefit of any future award from RUS.

27.     Loans, grants, and loan/grant combinations awarded through the ReConnect Program contain various terms and conditions.  Under 7 C.F.R. § 1740.43(c), "All proposed construction (including construction with matching and other funds) and all advance of funds must be completed no later than five years from the time funds are made available."

28.     Under 7 C.F.R. § 1740.81, "RUS reserves the right to deobligate awards to Awardees under this part that demonstrate an insufficient level of performance, wasteful or fraudulent spending, or noncompliance with environmental and historic preservation requirements."

---

[10] *Preparing to Apply: ReConnect Round 5*, USDA Rural Development,
    https://www.usda.gov/sites/default/files/documents/reconnect-program-preparing-webinar-r5.pdf.

[11] 7 C.F.R. § 1740.11(b)(1).

7

**A.**     **The ReConnect Program Round Four Awards to Interior and Mukluk**

29.      In Round Four of the ReConnect Program that occurred in fiscal year 2023, USDA's RUS awarded $34,993,700 and $34,989,295, respectively, to Interior and Mukluk, for each to "deploy a fiber-to-the-premises network to provide high-speed internet" to benefit individuals and businesses in the Nome Census Area in Alaska.[12]

30.      Unalakleet and Elim are both federally recognized Tribes located within the Nome Census Area in Alaska.[13]

31.      Neither Interior nor Mukluk obtained a Resolution of Tribal consent from the Tribal Councils of Unalakleet, Elim, or any other Tribes within the Nome Census Area as required by 7 C.F.R. § 1740.60(c)(19) prior to receiving funding from USDA's RUS during Round Four of the ReConnect Program.

32.      Rather, Interior and Mukluk approached a nonprofit community services organization called Kawerak, Inc. ("Kawerak"), claiming to have plans for investing millions of dollars into the region for the benefit of Kawerak's members—the Native Tribes within the Nome Census Area including Unalakleet and Elim.

---

[12] *ReConnect Program FY 2023 Funding Opportunity Announcement Awardees*, U.S. Department of Agriculture, https://www.usda.gov/reconnect/round-four-awardees.

[13] *See Nome Census Area, Alaska*, United States Census Bureau, https://data.census.gov/profile/Nome_Census_Area,_Alaska?g=050XX00US02180; *see Unalakleet*, Kawerak, Inc., https://kawerak.org/our-region/unalakleet/; *see Elim*, Kawerak, Inc., https://kawerak.org/our-region/elim/.

33.    Apart from their own investment of personnel, funds, and other resources, the investment plans advanced by Interior and Mukluk both depended on obtaining federal grants in accordance with the terms and requirements of the ReConnect Program.

34.    Kawerak exists for the purpose of supporting its member Tribes and advocating for opportunities that will benefit them.  According to its website, Kawerak's organizational mandate is to assist Native Tribes and their governing bodies with programs in education, transportation, natural resource management, economic development and other areas to improve the region's social, economic, educational, cultural and political conditions.

35.    Upon information and belief, Kawerak ordinarily will support any proposals designed to benefit its membership.  Such support does not excuse the applicant from complying with necessary conditions to federal funding; to the contrary, it assumes the applicant will discharge its obligations to comply with applicable regulations so the funding may lawfully issue.

36.    Interior and Mukluk didn't do that.

37.    Interior and Mukluk solicited and obtained from the board of Kawerak a letter of support for the two companies' investment plans, as would be expected, but never took the essential step of obtaining Tribal Resolutions from the Tribes actually affected by the proposals.

38.    Instead, Interior and Mukluk submitted the Kawerak letter to RUS as though it were itself a Tribal Resolution of the sort mandated by ReConnect Program rules.

39.    Kawerak is not a Tribe.  Kawerak is not a sovereign entity with jurisdiction over Tribal Lands, and it is not governed by a Tribal Council.

40.    Because Kawerak is not a federally recognized Tribe, it does not have the ability to pass a Resolution of Tribal Consent as mandated by ReConnect Program regulations.

41.    Kawerak likewise is not a Tribal Council or Tribal Government for Elim, Unalakleet, or the other Native Tribes it serves.

42.    Even if Kawerak wanted to issue a Tribal Resolution of Consent, it would not have the ability to do so.

43.    All of the foregoing is well known to the USDA, RUS, and companies like Interior and Mukluk who operate or plan to operate in the Nome region of Alaska. Kawarek traces its association roots to the 1960s, and it has existed in its current form for decades.

44.    Interior and Mukluk never obtained a Resolution of Tribal consent from any of the Kawerak member Tribes in accordance with 7 C.F.R. § 1740.60(c)(19).

45.    The failure of Interior and Mukluk to obtain a Resolution of Tribal consent prior to applying for funding under the ReConnect Program rendered them ineligible to receive grant funding under the USDA's regulations pertaining to the Program. Nonetheless, RUS awarded Interior and Mukluk substantial funding, thus denying Plaintiffs the federally guaranteed opportunity to participate in decisions affecting the use

of government money on their lands by issuing Resolutions of Tribal consent in support of applications suitable to the Tribes.

46.     Because the USDA's regulations pertaining to the ReConnect Program prevent funding to more than one project that serves any one given geographic area, ReConnect applicants that obtain Tribal consent in accordance with the USDA's regulations in future rounds of the ReConnect Program will not permitted to receive funding to construct broadband service infrastructure to serve covered homes and businesses on Tribal Land in the Nome Census area absent vacatur, cancellation, or disgorgement of the awards to Interior and Mukluk, as this geographic region will be deemed served by Interior and Mukluk.[14]

47.     Tribes such as Unalakleet and Elim have been forced to accept services from providers to which they did not consent—should Interior and Mukluk ever actually perform—and have been prevented from receiving services from providers to which they do consent, causing irreparable injuries for which monetary damages provide an inadequate remedy.

48.     By disregarding its current regulations pertaining to the ReConnect Program, RUS acted arbitrarily and capriciously in awarding Round Four funding to Interior and Mukluk.

49.     The arbitrary and capricious conduct of RUS constitutes a violation of the APA, 5 U.S.C. § 551 *et seq.*

---

[14] 7 C.F.R. § 1740.11(b)(1).

### C. The Obligations of Interior and Mukluk

50. Interior and Mukluk are subsidiaries of non-party Fastwyre Broadband ("Fastwyre"). Fastwyre has a history of delayed deployment of broadband services and employee lay-offs.

51. In fact, Fastwyre obtained a multi-million-dollar funding award in Round Two of the ReConnect Program to construct broadband service infrastructure in the Nome Census Region, and four years later it still has not completed this project.

52. Despite obtaining $34,993,700 and $34,989,295, respectively, in Round Four of the Reconnect Program to construct broadband service infrastructure in the Nome Census Region of Alaska, Interior and Mukluk lack the ability to begin construction and have not implemented a backhaul plan, which is necessary for connecting subnetworks to the core broadband network, to serve the region.

53. Because the USDA's regulations pertaining to the ReConnect Program prevent funding to more than one project that serves any given geographic area, ReConnect applicants that are sufficiently equipped to construct broadband service infrastructure to serve Tribal communities in the Nome Census Region are unable to receive ReConnect Program or other federal funding in future rounds to do so.[15]

54. Even apart from the impropriety of the RUS awards, the lack of performance by Interior and Mukluk will prevent unserved Tribal communities such as Unalakleet and Elim from obtaining access to broadband service. Not only have Interior and Mukluk failed

---

[15] 7 C.F.R. § 1740.11(b)(1).

to serve Tribes like Unalakleet and Elim, they have prevented other ReConnect applicants from receiving funding in future rounds to do so.

55. Under the ReConnect Program regulations, awardees of loans, grants, and loan/grant combinations are obligated to perform under the terms and conditions of those awards. According to 7 C.F.R. § 1740.43(c), "All proposed construction (including construction with matching and other funds) and all advance of funds must be completed no later than five years from the time funds are made available."

56. Even before this five-year period has elapsed, "RUS reserves the right to deobligate awards to Awardees under this part that demonstrate an insufficient level of performance, wasteful or fraudulent spending, or noncompliance with environmental and historic preservation requirements."[16]

57. Due to their failure to begin construction or develop a backhaul plan to connect any new infrastructure in the region, Interior and Mukluk have demonstrated an insufficient level of performance under their Round Four ReConnect Program award.

58. RUS maintains the right to deobligate funding awarded to Interior and Mukluk during Round Four of the ReConnect Program.

**D.  Impact on BEAD Funding**

59. The National Telecommunications and Information Administration ("NTIA") administers the Broadband Equity, Access, and Deployment ("BEAD") Program, which provides over $42 billion "to expand high-speed internet access by funding

---

[16] 7 C.F.R. § 1740.81.

VERIFIED COMPLAINT
NATIVE VILLAGE OF UNALAKLEET v. USDA

planning, infrastructure deployment and adoption programs in all 50 states, Washington, D.C., Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands."[17]

60.     The amount of funding allocated to eligible entities under the BEAD Program to disburse to subgrantees depends on the number of unserved locations that exist within an eligible entity's boundaries.[18]

61.     NTIA used Broadband Data Maps created by the Federal Communications Commission ("FCC") to identify the availability of broadband services in certain locations and to determine how funding will be allocated under the BEAD Program.[19]

62.     The State of Alaska, Department of Commerce, Community and Economic Development's Alaska Broadband Office ("ABO") administers the award of funding under the BEAD Program for the state and has developed its list of Broadband Serviceable Locations ("BSL") for BEAD Program funding based on NTIA's criteria.

63.     When identifying the state BSL, Alaska "may not treat as 'unserved' or 'underserved' any location that is already subject to an enforceable federal, state, or local

---

[17] *Broadband Equity Access and Deployment Program*, Broadband USA National Telecommunications and Information Administration, https://broadbandusa.ntia.doc.gov/funding-programs/broadband-equity-access-and-deployment-bead-program.

[18] *Internet for All: Frequently Asked Questions and Answers Version 5.0, Broadband, Equity, Access, and Deployment (BEAD) Program*, U.S. Department of Commerce & National Telecommunications and Information Administration, 21, https://broadbandusa.ntia.doc.gov/sites/default/files/2023-11/Broadband_Equity_Access_Deployment_Program_Frequently_Asked_Questions_Version_5.0.pdf.

[19] *Id.*

commitment to deploy qualifying broadband," which includes a grant or loan through the ReConnect Program.[20]

64.     Because Interior and Mukluk have been awarded funding through Round Four of the ReConnect Program to deploy broadband service to benefit individuals and businesses in the Nome Census Region in Alaska, this geographic region has been identified as "unserved but with projects pending" by the ABO.

65.     Because the ABO has identified this geographic region as subject to an award of RUS broadband funding, funding under the BEAD Program is not available to other service providers, even with Resolutions of Tribal Consent, to deploy broadband service to Tribal communities within this region, including Unalakleet and Elim.

66.     Although the Tribal Lands of Tribes such as Unalakleet and Elim are not eligible for BEAD funding, Interior and Mukluk have failed to actually deploy broadband service to this region.

67.     Thus, Tribes like Unalakleet and Elim lack access to broadband service, causing irreparable injuries for which monetary damages provide an inadequate remedy.

68.     RUS has been made aware of the improprieties described above, and yet has failed and refused to rescind the awards to Interior and Mukluk, to direct Interior and Mukluk to take any corrective action, or to deem the Native Lands of Unalakleet and Elim as eligible to be served such that future federal funds will be available to providers who

---

[20] *Notice of Funding Opportunity, Broadband Equity, Access, and Deployment Program*, National Telecommunications and Information Administration, U.S. Department of Commerce, 36, n.52, https://broadbandusa.ntia.doc.gov/sites/default/files/2022-05/BEAD%20NOFO.pdf.

VERIFIED COMPLAINT
NATIVE VILLAGE OF UNALAKLEET v. USDA

obtain Tribal Consent in accordance with applicable USDA regulations. This action is therefore necessary to compel the agency to remedy these injuries.

## COUNT I

*(Declaration that the decision of RUS to award Interior and Mukluk Round Four ReConnect funding in violation of its own regulations was arbitrary and capricious)*

69.     Plaintiffs incorporate paragraphs 1 through 68 as if fully set forth herein.

70.     Under the USDA's regulations pertaining to the ReConnect Program, "If service is being proposed on or over Tribal Land, a Government Resolution of Consent from the Tribal Council of the Tribal Government with jurisdiction over the Tribal Lands at issue must be provided to show that they are in support of the project and will allow construction to take place on Tribal Land."[21]

71.     According to 7 C.F.R. § 1740.60(c)(19), certification of a Resolution of Tribal consent must: "(i) Include a description of the land proposed for use as part of the proposed project; (ii) Identify whether the land is owned, held in Trust, land held in fee simple by the Tribe, or land under a long-term lease by the Tribe; (iii) If owned, identify the landowner; and (iv) Provide a commitment in writing from the landowner authorizing the applicant's use of that land for the proposed project."

72.     Neither Interior nor Mukluk obtained a Resolution of Tribal consent from the Tribal Councils of Unalakleet, Elim, or any other Tribes in accordance with 7 C.F.R. §

---

[21] 7 C.F.R. § 1740.60(c)(19).

1740.60(c)(19) prior to receiving funding from RUS during Round Four of the ReConnect Program.

73. USDA regulations pertaining to the ReConnect Program prevent funding to more than one project that serves any one given geographic area.[22]

74. Thus, ReConnect Program applicants that obtain Tribal consent in accordance with USDA Regulations in future rounds of the ReConnect Program are not eligible for funding to serve the geographic region, including the Tribal Lands of Unalakleet and Elim, that has already been deemed served by Interior and Mukluk.[23]

75. Tribes such as Unalakleet and Elim have been forced to accept the non-existent services of Interior and Mukluk, providers to which they did not consent, and have been prevented from receiving services from providers to which they do consent. This has caused irreparable injuries for which monetary damages provide an inadequate remedy.

76. By awarding Interior and Mukluk funding under Round Four of the ReConnect Program despite both Interior and Mukluk failing to obtain a Resolution of Tribal consent, RUS disregarded and approved the violation of its own regulations pertaining to the ReConnect Program.

77. By disregarding and approving the violation of its own regulations, RUS acted arbitrarily and capriciously in awarding Round Four funding to Interior and Mukluk.

---

[22] 7 C.F.R. § 1740.11(b)(1).

[23] *Id.*

17 CENTER 17

**VERIFIED COMPLAINT**
**NATIVE VILLAGE OF UNALAKLEET v. USDA**

78.    Plaintiffs are entitled to a declaration that this arbitrary and capricious conduct of RUS constitutes a violation of the APA, 5 U.S.C. § 551 *et seq.*

## COUNT II

*(Declaration that the decision of RUS to award Interior and Mukluk Round Four ReConnect funding in violation of its own regulations is void and unenforceable)*

79.    Plaintiffs incorporate paragraphs 1 through 78 as if fully set forth herein.

80.    Federal regulations at 7 C.F.R. § 1740.60(c)(19) set out specific and unambiguous minimum requirements for obtaining a Resolution of Tribal consent prior to receiving funding from RUS through the ReConnect Program.

81.    Neither Interior nor Mukluk obtained a Resolution of Tribal consent from the Tribal Councils of Unalakleet, Elim, or any other Tribe in accordance with 7 C.F.R. § 1740.60(c)(19) prior to receiving funding from RUS during Round Four of the ReConnect Program.

82.    Because USDA regulations pertaining to the ReConnect Program prevent funding to more than one project that serves any one given geographic area, future ReConnect Program applicants that actually obtain a Resolution of Tribal consent are not able to receive ReConnect funding to serve certain Tribal Lands, including those of Unalakleet and Elim, which have already been deemed served by Interior and Mukluk.[24]

83.    Plaintiffs are entitled to a declaration that the decision of RUS to award Interior and Mukluk Round Four ReConnect funding is void and unenforceable, such that

---

[24] *Id.*

these awards should not prevent Tribal Lands, including those of Unalakleet and Elim, from benefitting from future ReConnect Program funding.

## COUNT III

*(The failure of Interior and Mukluk to sufficiently perform under their Round Four ReConnect awards necessitates an injunction compelling deobligation of their awards)*

84.     Plaintiffs incorporate paragraphs 1 through 83 as if fully set forth herein.

85.     Despite obtaining $34,993,700 and $34,989,295, respectively, in Round Four of the ReConnect Program to construct broadband service infrastructure, Interior and Mukluk lack the ability to begin construction and have no backhaul plan in place to serve the region.

86.     Due to the lack of performance by Interior and Mukluk, unserved Tribal communities, including Unalakleet and Elim, are prevented from obtaining access to broadband service. Not only have Interior and Mukluk failed to serve Tribes such as Unalakleet and Elim, but they have prevented other ReConnect Program applicants from receiving funding in future rounds of the ReConnect Program to do so.

87.     Under 7 C.F.R. § 1740.43(c), "All proposed construction (including construction with matching and other funds) and all advance of funds must be completed no later than five years from the time funds are made available."

88.     Even before this five-year period has elapsed, "RUS reserves the right to deobligate awards to Awardees under this part that demonstrate an insufficient level of

performance, wasteful or fraudulent spending, or noncompliance with environmental and historic preservation requirements."[25]

89.     Due to their failure to begin construction or develop a backhaul plan to service the region, Interior and Mukluk have demonstrated an insufficient level of performance under their Round Four Reconnect Program awards, necessitating deobligation of their awards.

90.     RUS has demonstrated an unwillingness to comply with its own regulations to ensure that grants awarded for the benefit of Unalakleet and Elim (and other Tribes) have the effect of actually serving those communities; injunctive relief is thus required. USDA should be directed to cancel the awards to Interior and Mukluk, or deobligate those recipients, and return all unused funds to the pool of available funds for future ReConnect rounds to be awarded to applicants in compliance with applicable regulations.

## COUNT IV

*(The failure of Interior and Mukluk to sufficiently perform under their Round Four ReConnect awards necessitates an injunction compelling recognition by RUS that the Tribal Lands of Unalakleet and Elim are eligible for future federal funding)*

91.     Plaintiffs incorporate paragraphs 1 through 90 as if fully set forth herein.

92.     The amount of funding allocated by the NTIA to eligible entities under the BEAD Program depends on the number of unserved locations that exist within an eligible entity's boundaries.[26]

---

[25] 7 C.F.R. § 1740.81.

[26] *Internet for All: Frequently Asked Questions and Answers Version 5.0, Broadband, Equity, Access, and Deployment (BEAD) Program*, U.S. Department of Commerce & National Telecommunications and Information Administration, 21, https://broadbandusa.ntia.doc.gov/sites/default/files/2023-

93. The ABO, which administers the award of funding under the BEAD Program for the state of Alaska, has developed a list of locations for BEAD Program funding based on NTIA's criteria.

94. Alaska "may not treat as 'unserved' or 'underserved' any location that is already subject to an enforceable federal, state, or local commitment to deploy qualifying broadband" which includes a grant or loan through the ReConnect Program.[27]

95. Because Interior and Mukluk have been awarded funding through Round Four of the ReConnect Program to deploy broadband service to benefit individuals and businesses in the Nome Census Region in Alaska, this geographic region has been identified by the ABO as "unserved but with projects pending."

96. Even apart from the unlawful nature of the awards, because Interior and Mukluk have been awarded funding through Round Four of the ReConnect Program, this geographic region is not eligible for purposes of BEAD Program funding, without regard to whether Interior and Mukluk have performed any work at all to benefit the region.

97. Because this geographic region has an eligible commitment for broadband deployment through the ReConnect Program, funding under the BEAD Program is not available to service providers to deploy broadband service to Tribal communities within the region, including Unalakleet and Elim.

_____

11/Broadband_Equity_Access_Deployment_Program_Frequently_Asked_Questions_Version_5.0.pdf.

[27] *Notice of Funding Opportunity, Broadband Equity, Access, and Deployment Program*, National Telecommunications and Information Administration, U.S. Department of Commerce, 36, n.52, https://broadbandusa.ntia.doc.gov/sites/default/files/2022-05/BEAD%20NOFO.pdf.

98.    Due to the unlawful awards to Interior and Mukluk and to the failure of Interior and Mukluk to perform, Tribes such as Unalakleet and Elim lack access to broadband service, causing irreparable injuries for which monetary damages provide an inadequate remedy.

*    *    *

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

A.      Enter judgment for Plaintiffs on all counts of this Complaint;

B.      Enter a declaration that the arbitrary and capricious conduct of RUS in disregarding and approving the violation of its own regulations constitutes a violation of the APA, 5 U.S.C. § 551 *et seq.*;

C.      Enter a declaration that the decision of RUS to award Interior and Mukluk Round Four ReConnect funding in violation of its own regulations is void and unenforceable;

D.      Enter a permanent injunction against RUS, directing RUS to cancel the awards to Interior and Mukluk, or deobligate those recipients, and return all unused funds to the pool of available funds for future ReConnect rounds to be awarded to applicants in compliance with applicable regulations;

E.      Enter a permanent injunction against RUS, compelling RUS to recognize that the Tribal Lands of Unalakleet and Elim are eligible for alternative federal funding under the BEAD Program;

F.      Award Plaintiffs their litigation costs and reasonable attorney's fees; and

G.      Order such other relief as the Court may deem just and proper.

Dated:  May 2, 2024

Respectfully submitted,

REEVES AMODIO LLC
By: /s/ Susan Orlansky
Susan Orlansky, ABA 8106042
susano@reevesamodio.com
1057 W. Fireweed La., Suite 207
Anchorage, AK 99503
Telephone: +1.907.952.1668

MORGAN, LEWIS & BOCKIUS LLP
Jason R. Scherr, *Applying for Pro Hac Vice Admission*
jr.scherr@morganlewis.com
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001

*Attorneys for Plaintiffs Native Village of Unalakleet and Native Village of Elim*

**VERIFIED COMPLAINT**
**NATIVE VILLAGE OF UNALAKLEET v. USDA**

**Native Village of Unalakleet** 

<u>**VERIFICATION**</u>

I, Frank Katchatag, depose and say that I am a representative of the Plaintiff, the Native

Village of Unalakleet, in the above-captioned case and have authorized the filing of this

Complaint. I have reviewed the allegations made in the Complaint, and to those allegations of

which I have personal knowledge, all of which are true and correct to the best of my knowledge,

information, and belief.

_____
Frank Katchatag

Signed on this 24 day of APRIL, 20 24.

P.O. Box 270
Unalakleet, AK 99684
Ph: (907) 615-4611
Fax: (907) 615-4604

## **VERIFICATION**

I, Robert Keith, depose and say that I am a representative of the Plaintiff, the Native Village of Elim, in the above-captioned case and have authorized the filing of this Complaint. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, all of which are true and correct to the best of my knowledge, information, and belief.

Robert Keith

Signed on this _24_ day of _April_, 20_24_