**Susan Orlansky, ABA 8106042**
**Reeves Amodio LLC**
**1057 W. Fireweed La., Suite 207**
**Anchorage, AK 99503**
**Telephone: +1.907.952.1668**
**Email: susano@reevesamodio.com**

**Jason R. Scherr,** *pro hac vice*
**Morgan, Lewis & Bockius LLP**
**1111 Pennsylvania Avenue, NW**
**Washington, DC 20004**
**Telephone: +1.202.739.3000**
**Email: jr.scherr@morganlewis.com**

**Attorneys for Plaintiffs Native Village of Unalakleet and Native Village of Elim**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIVE VILLAGE OF UNALAKLEET and NATIVE VILLAGE OF ELIM, | |
| Plaintiffs, | *Oral Argument Requested* |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE'S RURAL UTILITIES SERVICE and ANDREW BERKE, in his official capacity as ADMINISTRATOR OF THE RURAL UTILITIES SERVICE, | Civil Action No. 3:24-cv-00100-SLG |
| Defendants. | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The ReConnect Program, administered by RUS, provides critical funding for

service providers to engage in projects to deploy broadband services in rural areas,

including Tribal Lands in Alaska. Adopted based upon feedback from Tribal leaders gathered by USDA's Office of Tribal Relations and Rural Development,[1] the ReConnect Program's regulations set out clear and unambiguous standards for applicants to obtain Resolutions of Tribal Consent as a condition of obtaining federal funding to engage in projects that involve construction over Tribal Lands.[2] This Court must uphold the purpose and validity of the ReConnect Program regulations by finding that RUS acted arbitrarily and capriciously when disregarding these regulations to award millions of federal dollars to applicants who failed to obtain Resolutions of Tribal Consent, causing irreparable harm both to the sovereignty of the affected Tribes and to their ability to access current and future federal funding and needed broadband services.

## I.   INTRODUCTION

ReConnect Program regulations require that, "[i]f service is being proposed on or over Tribal Land, a Government Resolution of Consent from the Tribal Council of the Tribal Government with jurisdiction over the Tribal Lands at issue must be provided to show that they are in support of the project and will allow construction to take place on Tribal Land."[3] Without a Resolution of Tribal Consent, a ReConnect Program application is incomplete, and the applicant is ineligible to receive Program funding. The purpose of the requirement of Tribal Consent is to ensure that sovereign Tribes are able to participate in funding decisions that will impact their land and communities.

---

[1]   88 Fed. Reg. 5724, 5726.
[2]   7 C.F.R. § 1740.60(c)(19).
[3]   *Id.*

During Round Four of the ReConnect Program in 2023, RUS awarded nearly $70 million in funding to Interior Telephone Company ("Interior") and Mukluk Telephone Company ("Mukluk") to deploy broadband services to individuals and businesses within the Nome Census Area of Alaska, home to a number of federally recognized Tribes, including Plaintiffs Unalakleet and Elim. Compl. ¶ 29. Prior to receiving these awards, Interior and Mukluk failed to obtain Resolutions of Tribal Consent from Unalakleet, Elim, or other Tribes in the region. Compl. ¶ 31. Compounding the problem, Interior and Mukluk have since failed to actually perform, or demonstrate an ability to perform, under the terms and conditions of the awards. Compl. ¶ 52. As a result, RUS deems unserved Tribes in this region "served" by Interior and Mukluk, which excludes these Tribes from receiving future ReConnect Program funding or alternative federal funding, despite their lack of access to broadband services. Compl. ¶ 46. Thus, RUS's decision to award ReConnect Program funding to Interior and Mukluk is doubly injurious—by ignoring its own regulations that recognize Tribal sovereignty and by denying the Tribes access to broadband services or alternative funding. Plaintiff Tribes Unalakleet and Elim pursue four claims against RUS in this action.

*First*, RUS's award of ReConnect Program funding to Interior and Mukluk entirely disregarded the requirement that ReConnect Program applicants must obtain a Resolution of Tribal Consent from impacted Tribes as mandated by 7 C.F.R. § 1740.60(c)(19). By disregarding its own regulations without providing a rational basis for doing so, RUS acted arbitrarily and capriciously in violation of the APA, 5 U.S.C. § 551 *et seq*.

*Second*, since RUS awarded Interior and Mukluk Reconnect Program funding despite their failure to obtain Resolutions of Tribal Consent, these awards are void and unenforceable under the language of the regulations. Therefore, the region that has been deemed served as a result of these void and unenforceable awards should remain—but currently is not—eligible to benefit from future ReConnect Program funding.

*Third*, Interior and Mukluk have failed to perform under the terms and conditions of their ReConnect Program awards. Program regulations allow RUS to deobligate an award if an awardee fails to demonstrate a sufficient level of performance. As Interior and Mukluk have failed to begin construction or arrange to connect to a telecommunications backbone (a "backhaul" plan),[4] RUS should exercise the right it reserves to deobligate their awards, allowing future ReConnect Program applicants to serve the region.

*Fourth*, Interior and Mukluk's failure to perform also has prevented Tribes within the region, such as Unalakleet and Elim, from maintaining eligibility to receive alternative federal funding from other agencies, such as the BEAD Program administered by the National Telecommunications and Information Administration ("NTIA"). The State of Alaska, Department of Commerce, Community and Economic Development's Alaska Broadband Office ("ABO"), which administers the BEAD Program in Alaska, has developed a list of locations eligible for BEAD Program funding. Under the criteria used to establish this list, Alaska may not treat as "unserved" or "underserved" any location that

---

[4] "Backhaul" refers to the intermediate network elements necessary to enable remote systems to communicate with the telecommunications backbone, the absence of which means that even if it were built, the Interior and Mukluk networks would not be able to carry any internet traffic to or from sites outside the local area.

is already subject to a federal funding commitment to deploy broadband. Because Interior and Mukluk have received Reconnect Program funding ostensibly to serve the Nome Census Area—even if that award is improper—the ABO has classified the region as ineligible to receive BEAD Program funding, despite Interior and Mukluk's failure to actually deploy broadband services.

Unalakleet and Elim have been irreparably harmed by RUS's award to Interior and Mukluk. Because Unalakleet and Elim did not consent to these projects, they have been forced to accept the non-existent services of providers they did not approve. That imposition would unduly infringe Tribal sovereignty even if the grantees delivered the proposed services. But here, Interior and Mukluk failed to uphold their funding commitments and have not even begun to deploy broadband to Tribal communities in the region. Compounding the initial injury, the existence of RUS's ReConnect award to Interior and Mukluk foreclose future ReConnect Program applicants who actually obtain Resolutions of Tribal Consent and have the ability to deploy broadband. For the same reason, the region also remains ineligible to receive alternative forms of federal funding by other agencies, such as funding under the BEAD Program.

RUS's decision to award funding in violation of the ReConnect Program regulations also harms the public interest. Tribes located in rural regions of Alaska depend on federal funding opportunities to receive access to broadband service infrastructure. Although Interior and Mukluk have failed to deploy these services to the region, Tribes such as Unalakleet and Elim are precluded from receiving the benefit of future federal funding (or services by contractors who respect Tribal sovereignty). Without access to broadband

service infrastructure, these Tribes are unable to participate in the digital economy. If RUS deobligates the ReConnect Program awards to Interior and Mukluk and recognizes the region's eligibility for future funding opportunities, at least that aspect of the harm would be mitigated. The funding could be reallocated to other applicants in future ReConnect rounds. While imperfect because the Tribes yet will have been denied the right to approve of the service providers funded in Round Four, this deobligation and reallocation of funding would at least allow RUS to uphold and fulfill its mission of serving rural communities through the deployment of broadband services in Round Five.

## II.  STATEMENT OF FACTS

### A. RUS Awarded ReConnect Program Funds to Interior and Mukluk Without Satisfying Requirements in ReConnect Program Regulations.

RUS "provides funding in the form of loans, grants, and loan/grant combinations for the costs of construction, improvement, or acquisition of facilities and equipment needed to facilitate broadband deployment in rural areas."[5]  Under ReConnect Program regulations, "If service is being proposed on or over Tribal Land, a Government Resolution of Consent from the Tribal Council of the Tribal Government with jurisdiction over the Tribal Lands at issue must be provided to show that they are in support of the project and will allow construction to take place on Tribal Land."[6]  According to USDA's Notice of Funding Opportunity ("NOFO"), applicants who do not obtain Resolutions of Tribal Consent will not be considered for funding.[7]

---

[5]  7 C.F.R. § 1740.1.
[6]  7 C.F.R. § 1740.60(c)(19).
[7]  88 Fed. Reg. 16579, 16581.

RUS's instructional materials pertaining to the ReConnect Program demonstrate the importance of satisfying the requirement of obtaining Tribal Consent. For example, USDA's online application and webinar materials for ReConnect Round Four emphasize the need for Program applicants to obtain Tribal Consent, it being "[v]ital to coordinate with Tribes early in the application process in order to ensure ample time to obtain the appropriate tribal certification."[8] In its Round Five (2024) instructional materials, USDA reaffirmed that "[a]ny application that does not provide a certification to provide service on the [T]ribal lands identified in the PFS will not be considered for funding."[9] These regulations were specifically adopted based upon feedback gathered from Tribal leaders by USDA's Office of Tribal Relations and Rural Development, and they serve the purpose of allowing Tribes to contribute to important decisions that impact their communities.[10]

In 2023, during Round Four, RUS awarded $34,993,700 and $34,989,295, respectively, to Interior and Mukluk, for each to "deploy a fiber-to-the-premises network to provide high-speed internet" to benefit individuals and businesses in the Nome Census Area in Alaska.[11] Prior to receiving these funding awards, neither Interior nor Mukluk obtained a Resolution of Tribal Consent from any of the Tribes within the Nome Census Area of Alaska, including Unalakleet and Elim. Compl. ¶ 31. Rather, Interior and Mukluk solicited a letter of support from the board of Kawerak, a nonprofit community services

---

[8] *Preparing for ReConnect Round 4*, USDA Rural Development, https://tinyurl.com/5yf9nn2y.
[9] *Preparing to Apply: ReConnect Round 5*, USDA Rural Development, https://tinyurl.com/4p8d98wr.
[10] 88 Fed. Reg. 5724, 5726.
[11] *ReConnect Program FY 2023 Funding Opportunity Announcement Awardees*, U.S. Department of Agriculture, https://tinyurl.com/mu5rpats.

organization. Compl. ¶ 32. Kawerak advocates for and supports opportunities to benefit its member Tribes, including programs in education, transportation, natural resource management, and economic development. Compl. ¶ 34. Kawerak's support claims neither to override nor excuse the obligation that applicants have to comply with all ReConnect regulations. USDA's files show that Kawerak told the agency it had provided support for multiple entities competing for ReConnect funding to provide fiber services, with the understanding that each of those applicants would be required to obtain consent from the federally recognized Tribal Governments via Resolutions of Consent. The "key point" of Kawerak's October 9, 2023 objection to the Interior and Mukluk awards was that neither applicant had obtained Resolutions of Consent from the Tribes themselves after Kawerak's support. *See* November 8, 2023 USDA Letter to Kawerak, attached hereto as **Exhibit C**.[12] USDA rejected that challenge on the invalid premise that Kawerak's support somehow substitutes for the Tribal Governments issuing Resolutions of Tribal Consent. *Id.*

USDA is wrong. Kawerak is not a federally recognized sovereign entity with jurisdiction over Tribal Lands, and it is not governed by a Tribal Council. Compl. ¶ 39. Its letter of support is neither a Resolution of Tribal Consent for itself or the Tribes it serves. Even if Kawerak supports a project to provide broadband services to its member Tribes, it

---

[12] A copy of the Kawerak letter that USDA invokes to excuse the requirement for Resolutions of Tribal Consent is, presumably, maintained in USDA's administrative file. **Ex. C**. If USDA intends to rely on the contents of its administrative file to raise a fact question as to the allegations of the verified complaint, it is incumbent on the agency to produce that file to Plaintiffs prior to any evidentiary hearing on the instant motion. *See Alaska, Dept. of Env't Conservation v. U.S. E.P.A*, 244 F.3d 748, 751 (9th Cir. 2001) (holding that production of agency file was necessary to "provide a full and complete administrative record of the basis for the agency's final decision and the Orders").

does not have the ability to pass a Resolution of Tribal Consent as mandated by ReConnect Program regulations—as RUS well knows. Interior and Mukluk never obtained the mandatory Resolutions of Tribal Consent from any of the Tribes in the Nome Census Area.

### B. Interior and Mukluk Have Failed to Perform Under Their ReConnect Program Awards.

ReConnect Program regulations also establish various terms and conditions for funding awards. Under 7 C.F.R. § 1740.43(c), "All proposed construction (including construction with matching and other funds) and all advance of funds must be completed no later than five years from the time funds are made available." Even prior to expiration of this time limit, "RUS reserves the right to deobligate awards to Awardees under this part that demonstrate an insufficient level of performance, wasteful or fraudulent spending, or noncompliance with environmental and historic preservation requirements."[13]

Despite obtaining $35 million each to construct broadband infrastructure in the Nome Census Area of Alaska, Interior and Mukluk lack the ability to begin construction and have no backhaul facilities to serve the region, compounding a history of delayed broadband deployment and employee lay-offs. Compl. ¶ 52. For example, Mukluk has yet to begin a project for which it received ReConnect Program funding four years ago. Compl. ¶¶ 50-51.[14] Applicable RUS regulations call for deobligating awards when

---

[13] 7 C.F.R. § 1740.81.

[14] USDA reports that Mukluk was awarded $4,119,428 in ReConnect Round Two (2020) "to deploy fiber-to-the-premises broadband service" to 173 households in 150 sq. miles. https://tinyurl.com/3hjn6skx. The Court may take judicial notice of such federal program reporting on government websites. *E.g.*, *Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("We may take judicial notice of records and reports of administrative bodies."); *see also* Plaintiffs' Motion for Judicial Notice, filed concurrently herewith.

applicants fail to sufficiently perform. Here, because Interior and Mukluk have failed to begin construction or develop a backhaul plan to connect any new infrastructure, their performance is not only insufficient; it is non-existent. The awards should be deobligated.

### C. Unalakleet and Elim Have Been Substantially Harmed by the Issuance of Funding Awards to Interior and Mukluk.

The ReConnect Program regulations state that "RUS will not fund more than one project that serves any one given geographic area."[15] Because Interior and Mukluk have obtained ReConnect funding to deploy broadband services in the Nome Census Area of Alaska, Tribes within that region have been precluded from obtaining the benefit of any future funding awards from RUS. Unalakleet and Elim, and other Tribes, have been deemed "served" for purposes of future ReConnect Program Funding without regard to performance by the grantees. Not only have these Tribes been forced to accept project proposals from providers to which they did not consent, but they are now precluded from receiving services from future ReConnect Program applicants.

Additionally, these same improper awards render Tribes within the region ineligible to receive alternative forms of federal funding, such as under the BEAD Program, which provides over $42 billion "to expand high-speed internet access by funding planning, infrastructure deployment and adoption programs in all 50 states, Washington D.C., Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands."[16] The amount of BEAD funding allocated to eligible entities

---

[15] 7 C.F.R. § 1740.11(b)(1).
[16] *Broadband Equity Access and Deployment Program*, Broadband USA NTIA, https://tinyurl.com/4xkw6jak.

is determined by the number of unserved locations within that entity's boundaries as determined by the ABO.[17] Alaska "may not treat as 'unserved' or 'underserved' any location that is already subject to an enforceable federal, state, or local commitment to deploy qualifying broadband," which includes a grant or loan through the ReConnect Program.[18] Based on the Interior and Mukluk ReConnect awards, the ABO deemed the region "unserved but with projects pending," meaning the ABO no longer regards the region as eligible to receive BEAD Program funding, either. Compl. ¶ 64; *see* **Exs. A & B**. Without the opportunity to obtain federal funding to support deployment of broadband services—from RUS, BEAD, or otherwise—Tribal communities in rural regions of Alaska are excluded from participation in, and enjoying the benefits of, a digital economy.

## III. <u>ARGUMENT</u>

Plaintiffs requesting a preliminary injunction must show that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). When the government is the offending party, the third and fourth factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Unalakleet and Elim satisfy all of these enumerated factors.

---

[17] *Internet for All: Frequently Asked Questions and Answers Version 5.0, Broadband, Equity, Access, and Deployment (BEAD) Program*, U.S. Department of Commerce & NTIA, 21, https://tinyurl.com/upkw8h92.

[18] *NOFO, Broadband Equity, Access, and Deployment Program*, NTIA, U.S. Department of Commerce, 36, n.52 ("NOFO n.52"), https://tinyurl.com/47jrt94v.

**A. Unalakleet and Elim Are Likely to Succeed on the Merits of Their Claims.**

For the likelihood of success prong of the preliminary injunction test, the Ninth Circuit applies the "serious questions" test, under which "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Applying this test, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. When there are multiple causes of action in a single complaint, a plaintiff need only identify "serious questions" as to one of those counts to demonstrate a likelihood of success on the merits. *See Lochirco Fruit & Produce Co. v. Tarukino Holdings, Inc.*, No. C18-763-RAJ, 2019 WL 157939, at *5 (W.D. Wash. Jan. 9, 2019) (citation omitted) ("As Court need only find likelihood of success on one claim to grant a preliminary injunction, Plaintiffs' remaining claims will not be analyzed at this time.").

  1. **Unalakleet and Elim are Likely to Succeed on Their Claims That the Challenged Awards Should Be Rescinded—or Alternatively Declared Void—Because RUS Acted Arbitrarily and Capriciously.**

Under the APA, courts will set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011) (citing 5 U.S.C. § 706(2)(A)). The standard does not substitute a court's judgment for that of the agency but, rather, "simply to ensure that the agency considered the relevant factors and articulated

a rational connection between the facts found and the choices made." *Id.* (citing *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007)). Where an agency chooses to establish its standards in advance, "[i]t is a well-known maxim that agencies must comply with their own regulations." *Ramon-Sepulveda v. I.N.S.*, 743 F.2d 1307, 1310 (9th Cir. 1984); *Mem'l, Inc. v. Harris*, 655 F.2d 905, 914 n.14 (9th Cir. 1980). This principle applies to standards stated in regulations: When an agency chooses to promulgate regulations reflecting its standards and criteria for review, it must follow those regulations. *See N.A. of Home Builders v. Norton*, 340 F. 3d 835, 852 (9th Cir. 2003) (holding that the Fish and Wildlife Service's conduct was arbitrary and capricious since, "[h]aving chosen to promulgate the DPS Policy, the FWS must follow that policy").

Here, RUS disregarding its own regulations was arbitrary and capricious. The regulations at 7 C.F.R. § 1740.60(c)(19) clearly require that ReConnect applicants must obtain Resolutions of Tribal Consent prior to being considered for or receiving funding through the Program. The regulations do not permit applicants to circumvent the Tribal Consent requirement by soliciting support from non-Tribal entities. USDA's NOFO for the ReConnect Program likewise states the requirement in clear and unambiguous terms:

> Any applicant that fails to provide a certification to provide service on the Tribal Lands identified in the [Proposed Funded Service Area] will not be considered for funding.[19]

While the mandatory nature of the Resolutions of Tribal Consent was settled before the improper awards challenged here, RUS reaffirmed the requirement in its instructional

---

[19] 88 Fed. Reg. 16579, 16581.

materials for both Round Four and Round Five of the ReConnect Program. The agency did not change its standards or impose new requirements. Rather, USDA has doubled down on the standard applicable to the Interior and Mukluk awards, reinforcing that Resolutions of Tribal Consent were always required.

Despite failing to obtain Resolutions of Tribal Consent from the Tribal Councils of Unalakleet, Elim, or any other Tribe, Interior and Mukluk received nearly $70 million in funding from RUS through Round Four of the ReConnect Program. At no time has RUS articulated a rational connection between the relevant facts and its funding decision. The relevant facts are that all applicants for Round Four funding were required to obtain Resolutions of Tribal Consent. Interior and Mukluk failed to obtain those resolutions. RUS awarded them funds anyway. So RUS either excused Interior and Mukluk from complying with the regulations or chose to behave as though Interior and Mukluk had satisfied them. Neither provides a cogent explanation.

The requirement for Resolutions of Tribal Consent was not excused. *First*, RUS does not even pretend to claim that its regulations did not apply to ReConnect Round Four, and its subsequent public statements in Round Five demonstrate that RUS continues to apply the same mandatory standard. *Second*, while RUS has discretion to select award recipients, that discretion does not include excusing some applicants from complying with mandatory regulations while requiring other applicants and the general public to abide them. *See Akee v. Office of Navajo & Hopi Indian Relocation*, 907 F.Supp. 315, 319 (D. Ariz. 1995) ("Generally, administrative agencies must apply the 'same basic standard of conduct to all parties before them.'").

When Kawerak learned that the Interior and Mukluk awards were issued without Tribal Consent, Kawerak submitted an objection on that basis. RUS's response—that Kawerak had supported the challenged applications *See* **Ex. C**[20]—ignored that Kawerak neither has the power to excuse applicants from complying with federal regulations nor ever purported to endorse awards to applicants who fail to do so. More importantly, even had it wanted to, a nonprofit community services organization like Kawerak has no power to override or substitute its own views for those of the Tribal Governments of the Tribes it supports. Kawerak is not a federally recognized Tribe; it does not have the ability to pass a Resolution of Tribal Consent. Kawerak exists for the purpose of supporting its member Tribes, but that support does not translate into a substitute for complying with all applicable regulations, and RUS never could have been justified in believing otherwise.

ReConnect Program regulations unambiguously require a Resolution of Tribal Consent from the Tribal Council with jurisdiction over the land affected.[21] Kawerak is not a Tribal Council with jurisdiction over Tribal lands, and lacks capacity to satisfy the agency's requirement. A Resolution must "(i) Include a description of the land proposed for use as part of the proposed project; (ii) Identify whether the land is owned, held in Trust, land held in fee simple by the Tribe, or land under a long-term lease by the Tribe; (iii) If owned, identify the landowner; and (iv) Provide a commitment in writing from the landowner authorizing the applicant's use of that land for the proposed project."[22] RUS

---

[20] *See* Plaintiffs' Motion for Judicial Notice filed concurrently herewith.
[21] 7 C.F.R. § 1740.60(c)(19).
[22] *Id.*

NATIVE VILLAGE OF UNALAKLEET, *ET AL.* V. USDA, *ET AL.*
CASE NO. 3:24-cv-00100-SLG

Page 15

has never attempted to show that it obtained such a Tribal Resolution from either Plaintiff Tribe in support of the Interior and Mukluk applications. Those applications should not have been considered. The NOFO provides explicitly that "[a]ny applicant that fails to provide a certification to provide service on the Tribal Lands identified in the [Proposed Funded Service Area] will not be considered for funding."[23] Yet, RUS awarded $70 million to Interior and Mukluk anyway. Having articulated no rationale other than the since-withdrawn statement of support from Kawerak for its decision to disregard the requirement of formal Tribal Consent, RUS has acted arbitrarily and capriciously.

### 2. Unalakleet and Elim are Likely to Succeed on Their Independent Claim That Interior and Mukluk Have Failed to Perform Under Their Challenged Round Four Awards.

Under 7 C.F.R. § 1740.81, "RUS reserves the right to deobligate awards to Awardees under this part that demonstrate an insufficient level of performance, wasteful or fraudulent spending, or noncompliance with environmental and historic preservation requirements." Under 7 C.F.R. § 1740.43(c), "All proposed construction (including construction with matching and other funds) and all advance of funds must be completed no later than five years from the time funds are made available." Despite receiving nearly $70 million in ReConnect Program funding, Interior and Mukluk have not begun construction and have no backhaul plan in place to serve the region. The absence of a backhaul plan means that even if it were built, the Interior and Mukluk networks would not be able to carry any internet traffic to or from sites outside the local area—thus denying

---

[23] 88 Fed. Reg. 16579, 16581.

broadband access and the essential promise for which the agency granted funds in the first instance. Compl. ¶¶ 51, 52. This is consistent with Mukluk's behavior after obtaining millions of dollars in ReConnect funding during Round Two, which still is not completed. Perhaps Interior and Mukluk could, in theory, establish a backhaul connection to a telecommunications backbone for internet traffic, begin construction, and complete their projects within five years from their awards. But right now they haven't done any of those things, and with a dramatic departure of personnel and resources from Alaska, there's no indication that either company will change course. RUS could have deobligated the awards independently of this action. As the agency has so far refused, the harm to Plaintiffs is ongoing, warranting preliminary injunctive relief including deobligation of the challenged awards by RUS. The applicable standard on this prong of the preliminary injunction test requires only a "serious question" whether either company demonstrates "an insufficient level of performance" such that applicable regulations warrant deobligating the ReConnect awards during the pendency of this action. Where the balance of hardships tilts heavily in favor of Unalakleet and Elim and irreparable injury is likely, nothing more is required to support preliminary injunctive relief. *See Alliance for the Wild Rockies*, 632 F.3d at 1135 ("'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction . . . .").

### B. Unalakleet and Elim Will Suffer Irreparable Harm Absent an Injunction.

The improper agency action challenged here works a perfect storm of injuries to the Tribes in the Nome Area, including Unalakleet and Elim. *First*, by disregarding regulations that require Tribal consent, RUS caused an irreparable injury to the sovereignty

of Native Tribes by denying them the participation right to which they are entitled. No amount of money can restore that participatory interest, so the injury is irreparable. While an injunction cannot undo the injury of excluding Plaintiffs from their sovereign right to participate, an injunction can interrupt much of the ongoing harm by preserving unspent funds for future development in which the Tribes do participate, while removing the barrier that extends the injurious exclusion to all other federal programs. *Second*, the grant recipients who received the awards have not begun to do any work—and have no demonstrated ability to build a network infrastructure—so the region has obtained no benefit from earmarking some $70 million in federal funds. And even if Interior and Mukluk were to begin building, the result would be forcing the Tribes to accept services from contractors they never authorized on their lands, while simultaneously precluding work by contractors they would approve. *Third*, the existence of the RUS grant awards to Interior and Mukluk destroys the region's eligibility for future infrastructure funding—no matter whether Interior and Mukluk draw any of the funds or build anything at all. RUS's unlawful action has the effect of <u>deeming</u> the area served without actually <u>causing</u> the area to be served. By freezing out the region from eligibility for future federal dollars earmarked for the purpose of serving the same area, RUS works an irreparable injury on the Tribes of the region, including Unalakleet and Elim.

Under the irreparable harm prong of the preliminary injunction test, a plaintiff must "establish that 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR,

2011 WL 1211684, at *2 (D. Ariz. Mar. 30, 2011). Thus, "[h]arm is irreparable when it cannot be remedied except through injunctive relief." *Id.*

The first injury undermines the sovereignty of the Native Tribes. The regulations RUS ignored aren't just procedural; they exist for the purpose of honoring the participation right of the Tribes in decisions affecting Tribal lands. USDA asserts that the regulation requiring Resolutions of Tribal Consent reflects "a commitment to honoring the sovereignty of [T]ribal governments" and that "RUS takes that responsibility very seriously." **Ex. C**. The question isn't whether RUS made a "good" or "bad" decision, or whether it thinks a given decision is helpful or harmful to the Tribes. The fact remains that the Tribal governments were not participants in the decision-making ostensibly on their own behalf—that is the very essence of Tribal sovereignty. Harm to a Tribe's sovereignty "cannot be remedied by any other relief other than an injunction." *Northern Arapaho Tribe v. LaCounte*, 215 F. Supp. 3d 987, 1000 (D. Mont. 2016) (granting preliminary injunction to prevent future injuries occasioned by lack of Tribal consent) (citing *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024, 1034 (D. Ariz. 1993)). In *Northern Arapaho Tribe*, the plaintiff Tribe alleged breach of trust by a federal agency (the Bureau of Indian Affairs, or BIA) for purporting to approve contracts for services to affected Tribes without first obtaining approval from each of them. The court observed that "[t]he United States's fiduciary responsibilities toward Indian Tribes applies to actions of the federal government." *Id*. at 998. Like here, the applicable federal standard in that case required "the approval of each such Indian tribe" as a condition to making grants to an organization to perform services benefiting the Tribes. *Id.* at 999, *citing* 25 USC § 5304(1). Where that

consent had not been obtained, the *Northern Arapaho Tribe* court concluded that a preliminary injunction was warranted. *Id.* at 1000. As that court observed, "NAT [Northern Arapahoe Tribe] possesses a legitimate interest in its approval being required . . . ." *Id.*; *accord Alturas Indian Rancheria v. California Gambling Control Comm'n*, No. S-11-2070, 2011 WL 3503142, at *2 (E.D. Cal. Aug. 10, 2011) (granting temporary restraining order for injury to Tribal sovereignty stemming from "unilaterally remov[ing] the Tribe from the decision-making process").

A second injury stems from Interior and Mukluk's failure to perform under their Round Four ReConnect Program awards. As a result of that failure, Tribes in the Nome Census Area of Alaska, including Unalakleet and Elim, still lack access to broadband services. This situation could continue indefinitely. The mere existence of the federal RUS grants, whether used or not, means no other contractor can obtain federal funding to serve the area because "RUS will not fund more than one project that serves any one given geographic area."[24] Elim and Unalakleet have been denied the opportunity to select a contractor that actually will do the necessary work.

The problem is not just limited to RUS-administered funding programs, which is the third irreparable injury. The Broadband Equity Access and Deployment ("BEAD") Program will provide more than $42 billion to expand high-speed internet access throughout the country, with more than $1 billion set aside for unserved or underserved communities in Alaska. Applicable BEAD regulations, however, set the amount of funding

---

[24] 7 C.F.R. § 1740.11(b)(1).

available to subgrantees (broadband providers) based on the number of unserved locations that that exist within an eligible entity's boundaries.[25]   The ABO "may not treat as 'unserved' or 'underserved' any location that is already subject to an enforceable federal, state, or local commitment to deploy qualifying broadband."[26]   Because RUS has committed nearly $70 million to Interior and Mukluk to deploy broadband services to the Nome Census Area, the ABO no longer classifies this region as "unserved," thereby destroying its eligibility to benefit from grant awards otherwise available under BEAD— again, without respect to whether Interior and Mukluk actually spend even a single dollar or make any improvements.  RUS has worked an irreparable injury on the region, including Unalakleet and Elim, by causing it to lose its "unserved" designation for federal funding purposes.  Only by rescinding the improper awards and making the affected funds available for award to applicants who satisfy the Tribal Consent requirements of the RUS grants can the immediate harm be mitigated.

The lack of access to broadband service, and the wrongful designation of ineligibility to benefit from future opportunities to receive such access, constitute irreparable harm in addition to the direct and irreparable assault on Tribal sovereignty effected by RUS ignoring the requirement for Tribes to participate in the decision-making process.  There is a "sufficient causal connection" between RUS's improper decision to award ReConnect funding to Interior and Mukluk, who are unable to actually perform

---

[25] *Internet for All: Frequently Asked Questions and Answers Version 5.0, Broadband, Equity, Access, and Deployment (BEAD) Program*, U.S. Department of Commerce & NTIA, 21, https://tinyurl.com/upkw8h92.

[26] *See* NOFO n. 52, *supra* n. 18.

under these awards, and the current inability of Tribes such as Unalakleet and Elim to access broadband services.

### C. Neither Defendants Nor the Public Interest Would Be Harmed By An Injunction.

When the government is the offending party, the third and fourth factors of the test for obtaining a preliminary injunction merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Thus, courts will consider the balance of equities and the benefit to the public interest together when determining whether to order a preliminary injunction.

RUS will not be harmed by deobligating Interior and Mukluk's Round Four ReConnect Program awards. Rather, funds granted to Interior and Mukluk can be reallocated to other applicants in future rounds of the ReConnect Program, which are already scheduled to take place. By making this funding available to future applicants who obtain Resolutions of Tribal Consent and demonstrate an ability to perform under their awards, RUS will be able to fulfill the ReConnect Program's goal of "expand[ing] broadband service to rural areas that do not have sufficient access to broadband."[27] Designating Tribes such as Unalakleet and Elim as eligible to receive future ReConnect Program funding, as well as alternative forms of federal funding, will likewise serve to fulfill RUS's mission.

Additionally, granting Plaintiffs this injunctive relief will benefit the public interest. Since taxpayers contribute to the funds available under the ReConnect Program, they

---

[27] 7 C.F.R. § 1740.1(a).

NATIVE VILLAGE OF UNALAKLEET, *ET AL.* V. USDA, *ET AL.*                                    Page 22
CASE NO. 3:24-cv-00100-SLG

Case 3:24-cv-00100-SLG   Document 9   Filed 05/24/24   Page 22 of 25

benefit from the productive use of this funding by awardees who are capable of deploying broadband services. The public at large also benefits from rural Tribal communities obtaining access to broadband services, as this access allows individuals and businesses within these communicates to participate in the digital economy. Thus, considering the balance of equities and the benefit to the public interest together, Plaintiffs Unalakleet and Elim have satisfied the final two prongs of the test for obtaining injunctive relief.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant a preliminary injunction that:

(1) compels RUS to deobligate Interior and Mukluk's void and unenforceable ReConnect Program awards, and

(2)  compels RUS to designate the Tribal Lands of Unalakleet and Elim as eligible for future federal funding during the pendency of this action.

Dated: May 24, 2024

REEVES AMODIO LLC
By: /s/ Susan Orlansky
    Susan Orlansky, ABA 8106042
    susano@reevesamodio.com

1057 W. Fireweed La., Suite 207
Anchorage, AK 99503
Telephone: +1.907.952.1668

MORGAN, LEWIS & BOCKIUS LLP
By: /s/ Jason R. Scherr
    Jason R. Scherr, *pro hac vice*
    jr.scherr@morganlewis.com

1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001

*Attorneys for Plaintiffs Native Village of Unalakleet and Native Village of Elim*

## LOCAL CIVIL RULE 7.4 CERTIFICATION

I HEREBY CERTIFY that the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction contains 5,554 words in 13-point font, including headings, exclusive of caption, signature block, and footnotes.

/s/ Jason R. Scherr
Jason R. Scherr

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2024, I served the foregoing document via first

class mail on the following:

U.S. Department of Agriculture's Rural Utilities Service
1400 Independence Avenue, S.W.
Washington, D.C. 20250

Andrew Berke
1400 Independence Avenue, S.W.
Washington, D.C. 20250

/s/ Jason R. Scherr
Jason R. Scherr