S. LANE TUCKER
United States Attorney

NOAH ROETMAN
DUSTIN M. GLAZIER
Assistant U.S. Attorneys
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Noah.Roetman@usdoj.gov
Email: Dustin.Glazier@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NATIVE VILLAGE OF UNALAKLEET and
NATIVE VILLAGE OF ELIM,

          Plaintiffs,

    vs.

UNITED STATES DEPARTMENT OF
AGRICULTURE'S RURAL UTILITIES SERVICE
and ANDREW BERKE, in his official capacity as
Administrator of the Rural Utilities Service,

          Defendants.

Case No.  3:24-cv-00100-SLG

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

Plaintiffs, the Native Village of Unalakleet ("Unalakleet") and the Native Village of

Elim ("Elim") seek to enjoin two grants intended to improve rural broadband internet

access that were approved by the Rural Utilities Service ("RUS"), an agency of the U.S. Department of Agriculture ("USDA"). They have sued the RUS but not the grant recipients, Interior Telephone Company ("Interior") and Mukluk Telephone Company ("Mukluk").

Plaintiffs claim that RUS should not have approved the subject grants because Interior and Mukluk did not present Tribal Resolutions with their Round Four ReConnect applications for funding, as required for projects serving Tribal Lands. As a result of these awards, Plaintiffs allege that RUS's approval of the grants thus (1) violated the relevant ReConnect regulations, (2) was arbitrary and capricious in violation of the Administrative Procedures Act (APA), and (3) violated Tribal sovereignty in making such awards without Tribal Resolutions supporting the projects. Plaintiffs are unlikely to prevail on any of these claims. Moreover, Plaintiffs have not shown that the remaining preliminary injunction factors weigh in their favor. Because these factors weigh against Plaintiffs, the Court should deny Plaintiffs motion.

## BACKGROUND

In 2018, Congress established the pilot Rural eConnectivity Loan and Grant Program ("ReConnect") ReConnect Program and appropriated monies to help rural communities get access to broadband internet. *See* Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, Div. A, Title VII § 779, 132 Stat. 348 (Mar. 23, 2018). Monies appropriated to the program could only be awarded to areas that lacked broadband access as was defined in the relevant ReConnect funding opportunity announcement ("FOA"). As a pilot, RUS operated the program for two rounds of funding until it issued regulations in

February 2021. *See* ReConnect Regulations, 86 Fed. Reg. 11603 (Feb. 26, 2021).

RUS published a Fourth Round FOA in August 2022. *See* Round Four ReConnect FOA 87 Fed. Reg. 47690 (Aug. 4, 2022) to which Interior and Mukluk applied. RUS re-reviewed their applications and concluded that they complied with the criteria in the statute and FOA.

## STANDARD OF REVIEW

A preliminary injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Courts must reserve this "extraordinary and drastic remedy" for cases where a plaintiff makes "a clear showing" for this relief. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (internal citations omitted). Such a showing is a "difficult task[.]" *Earth Island Inst. V. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Coucil*, 555 U.S. 7, 24(2008)).

To justify a preliminary injunction, the movant must show that "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the injunction is not granted; (3) the balance of equities tips in its favor; and (4) an injunction is in the public's interest." *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (citing *Winter*, 555 U.S. at 20). A plaintiff cannot prevail without some showing on each of those factors. *See Winter*, 555 U.S. at 23-24, 31-32. In cases where the government is the opposing party the third and fourth factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit applies the "serious questions test," where "'serious questions

going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

A preliminary injunction "can take two forms" either prohibiting or mandating action. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). A prohibitory injunction preserves "the status quo pending determination of the action on the merits." *Chalk v. U.S. Dist. Court, Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). A mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC W. Inc.*, 516 U.S. 479, 484 (1996). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (quotations omitted).

## ARGUMENT

### I.     Plaintiffs cannot establish a likelihood of success on the merits.

As to the first element of the preliminary injunction, "substantially likely to succeed on the merits," Plaintiffs have not established such likelihood of success on any of their claims, primarily because (1) the lands in question are not "Tribal Lands" as defined by the Round Four ReConnect FOA and (2) even if the lands were Tribal Lands, the regulation requiring Resolutions of Tribal consent was not in effect when Plaintiffs applied to the Round Four ReConnect FOA.

*Native Village of Unalakleet and Elim v. U.S.D.A Rural Utilities, et al.*
Case No. 3:24-cv-00100-SLG                         4

To succeed on the merits Plaintiffs must have standing. *See Bd. of Natural Resources of State of Wash. V. Brown*, 992 F.2d 937, 945 (9th Cir. 1993) (citing *Sec. of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 954–55, (1984)); *ASARCO v. Kadish*, 490 U.S. 605, 611 (1989). To have standing, Plaintiffs must show that they are within this "zone of interest" which the statute or here, regulation, seeks to protect. See *Clarke v. Securities Inv. Ass'n.*, 479 U.S. 388, 400 (1987). Plaintiffs base their standing on occupying Tribal Lands and thus being deprived of having input in the approval of the Interior and Mukluk ReConnect awards for lacking Tribal Resolutions and being deprived of receiving future federal broadband awards. Compl. at ¶¶ 2, 3, 10. Here, Plaintiffs fail in establishing standing.

First, Plaintiffs state that they are federally recognized Tribes occupying Tribal Lands in the Nome Census Area of Alaska. Compl. at ¶ 2. That fact, if true, is the basis of their entire Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-559, claim. However, Tribal Lands is a defined term in the Round Four ReConnect FOA. Specifically, Tribal Lands is defined as "any area identified by the United States Department of Interior as tribal land over which a Tribal Government exercises jurisdiction. A GIS layer of most Tribal Lands can be found on the RUS mapping tool located at https://www.usda.gov/reconnect." Round Four ReConnect FOA 87 Fed. Reg. 47690, 47692 (Aug. 4, 2022). As can be seen in the attached RUS maps of Interior Telephone Company's ("Interior") application review, the Native Village of Unalakleet ("Unalakleet") is not contained in an area covering Tribal Lands. *See* Exhibit A, Maps of Interior's

*Native Village of Unalakleet and Elim v. U.S.D.A Rural Utilities, et al.*
Case No. 3:24-cv-00100-SLG                    5

ReConnect Tribal Analysis. Likewise, as seen in Mukluk Telephone Company's ("Mukluk") application review, The Native Village of Elim ("Elim") is also not contained in an area covering Tribal Lands. *See* Exhibit B, Maps of Mukluk's ReConnect Tribal Analysis. In fact, only one federally recognized Tribal Land, as defined in the Round Four ReConnect FOA, exists in all of the State of Alaska, which is Annette Island.

Moreover, Plaintiffs allege that "USDA's clear and unambiguous regulations pertaining to the ReConnect Program require that, '[i]f service is being proposed on or over Tribal Land, a Government Resolution of Consent from the Tribal Council of the Tribal Government with jurisdiction over the Tribal Lands at issue must be provided to show that they are in support of the project and will allow construction to take place on Tribal Land.' 7 C.F.R. § 1740.60(c)(19)". Plaintiffs' Motion for Preliminary Injunction at p. 2; Comp. at ¶¶ 20, 70. That statement, today, would be true; however, in February 2021 when Interior and Mukluk applied under the Round Four ReConnect FOA, the ReConnect Regulations at 7 C.F.R. § 1740.60(c)(19) read as follows: "If service is being proposed on tribal land, a certification from the proper tribal official that they are in support of the project and will allow construction to take place on tribal land." ReConnect Regulations, 86 Fed. Reg. 11603, 11616 (Feb. 26, 2021). Given that the Round Four ReConnect FOA was issued August 4, 2022, and that the regulations cited by Plaintiffs at 7 C.F.R. § 1740.60(c)(19) were not yet in effect until January 30, 2023, Plaintiffs' claim that RUS failed to ensure that a Tribal Resolution was received by Interior and Mukluk, as required by regulation, is inaccurate. *See* Rural eConnectivity Program Final Rule 88 Fed. Reg. 5724, 5725 (Jan. 30,

2023).  Accordingly, with no Federal Lands in question and no Tribal Resolution required by regulation, Plaintiffs cannot establish they are in the zone of interest protected by the ReConnect statute or regulations.  As a result, they lack standing to contest the awards to Mukluk and Interior and necessarily cannot show a likelihood of success on the merits.

**II.      Plaintiffs have not demonstrated that they will suffer irreparable harm.**

If the Court does find a substantial likelihood of success on the merits, which Defendant stringently denies, then the next prong requires Plaintiffs to show that they will suffer irreparable harm. Speculative harm is not sufficient and so injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time". *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). "[T]he plaintiff must demonstrate a real or immediate threat of an irreparable injury," *Cole v. Oroville Union High Sch. Dist.,* 228 F.3d 1092, 1100 (9th Cir. 2000), which is "*likely*, not just possible," *Alliance*, 632 F.3d at 1131. The Villages here have referenced harms that are merely conjectural.

Plaintiffs claim that "RUS's improper awards of funding to Interior and Mukluk also compromise the rights of Tribes such as Unalakleet and Elim to benefit from alternative federal funding administered by agencies other than USDA, such as the Broadband Equity, Access, and Deployment ("BEAD") Program, causing additional irreparable harm." Plaintiffs' Motion for Preliminary Injunction at p. 3; Compl. at ¶¶ 54, 65.  Plaintiff Unalakleet, however, has failed to mention that the Tribal Broadband Connectivity Program award to the Alaska Village Initiative on September 27, 2023, for $7,000,000, of which Unalakleet is a member and recipient, will provide "a fiber to the premise last mile

*Native Village of Unalakleet and Elim v. U.S.D.A Rural Utilities, et al.*
Case No. 3:24-cv-00100-SLG                    7

distribution for the Nation Village of Unalakleet". *See* https://broadbandusa.ntia.doc.gov/funding-programs/tribal-broadband-connectivity/award-recipients. Such an award was made directly over Interior's RUS ReConnect project, approved May 16, 2023, which will serve, among other communities, the "Unalakleet Alaska Native Village." *See* Exhibit C, Interior ReConnect Offer Letter. Having received a federal broadband award *after* Interior's ReConnect project was awarded, Unalakleet cannot argue that it has been irreparably harmed from benefitting from alternative federal funding administered by agencies other that USDA, when it has already directly received other federal broadband funding after RUS' ReConnect award was made.

Moreover, Plaintiffs have not established that their alleged injury is "certain and great" for two reasons. First, Plaintiffs have no guarantee that they would receive any such future federal funding if they applied. Such assertions are speculative. Second, and more critical, Plaintiffs would not be denied the benefit of federally supported broadband in their villages and thus can have no injury if the subject ReConnect awards are built. Contrary to Plaintiffs' assertions that Interior and Mukluk have failed to perform under their awards and that RUS must deobligate those awards, there is no evidence that these companies lack the resources to build out these awards. As an initial matter, Plaintiffs' opinions as to why the awards must be rescinded and deobligated cannot be substituted for the agency's statutory and regulatory authority in servicing of its own awards. But equally important, however, is that Plaintiffs' arguments with respect to these awards are factually incorrect.

While the ReConnect regulations under 7 C.F.R. § 1740.43(c) have not changed and "[a]ll proposed construction (including construction with matching and other funds) and all advance of funds must be completed no later than five years from the time funds are made available[,]" the award agreements for Round Four awardees makes clear that "'Release of Funds Date' shall mean the date funds are first made available as evidenced by the notice sent by the Agency to the Awardee." *See* Exhibits D-E, Interior and Mukluk grant agreements. Moreover, Section 5.8(e), Commencement and Completion of the Project, stipulates that "(1) Awardees are required to commence the Project within 180 days from the date that RUS notifies in writing that the environmental review process has been concluded; and (2) Project Completion shall occur within five years from the Release of Funds Date." *Id.* In accordance with environmental law, RUS does not send a notice of release of funds until a project has completed environmental review. Given that Interior and Mukluk are presently still engaged in Section 106 reviews of the National Historic Preservation Act of 1966, 54 U.S.C. 300101 et seq., neither company has been given the notice of release of funds, *i.e.*, the approval to begin construction. Accordingly, Interior and Mukluk have not violated the statutory or contractual requirements of their awards. Therefore, Plaintiffs have no certain and great injury that they will be deprived of high-speed broadband. To the contrary, Unalakleet will have broadband under its Tribal Broadband Connectivity Program award regardless of whether Interior completes its project or not. As a result, Plaintiffs have not shown that the threatened harm is likely to occur, especially here where the merits are likely to be decided on a motion to dismiss.

*Native Village of Unalakleet and Elim v. U.S.D.A Rural Utilities, et al.*
Case No. 3:24-cv-00100-SLG                          9

Plaintiffs therefore have not demonstrated irreparable harm that necessitates the extraordinary remedy of an injunction.

### III.   The balance of the equities and public interest weigh strongly against an injunction.

When the government is involved, the last two elements for a preliminary injunction merge. *Nken*, 556 U.S. at 435.  First, the citizens of rural Alaska are the beneficiaries of the ReConnect program, not Plaintiffs. If high-speed broadband does not already exist in the areas of the subject ReConnect awards, then the equities lie in moving forward with entities that can, and will, provide service.  If projects such as these are halted by injunctions, the delay in getting broadband out to rural customers, the very purpose of the funds appropriated by Congress, will be great.  Any permitted injunction will have serious impacts on the ability of program recipients in getting out their projects on time and on budget.

The equities here lie with the USDA/RUS and the residents of Alaska, who need reliable broadband service as soon as possible, not years from now. The federal government's last large-scale assistance program to get broadband out to rural Americans was over 15 years ago with the American Recovery and Reinvestment Act of 2009, 4 Public Law 111–5, 123 Stat. 115 (2009), and so impeding these awards could have long-term effects on the citizens of rural Alaska. If Plaintiffs succeed at trial, their relief could be complete. Such a delay is far less a public concern than the speedy access to high-speed broadband by local citizens. As the country learned during the pandemic, the use of

*Native Village of Unalakleet and Elim v. U.S.D.A Rural Utilities, et al.*
Case No. 3:24-cv-00100-SLG                 10

broadband for homework for schoolchildren, gainful at-home employment for their parents, ordering necessary supplies online, connections for first responders, and so on, are critical to the citizens of rural Alaska in dire need of broadband.

As a result, the preliminary injunction requested would benefit Plaintiffs alone to the detriment of the public.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction.

RESPECTFULLY SUBMITTED this July 3, 2024, in Anchorage, Alaska.

S. LANE TUCKER
United States Attorney


/s/ Noah Roetman
Assistant U.S. Attorney
United States of America

/s/ Dustin M. Glazier
Assistant U.S. Attorney
United States of America


**CERTIFICATE OF SERVICE**
I hereby certify that on July 3, 2024,
a true and correct copy of the foregoing
was served electronically on the following:


s/ Noah Roetman
United States Attorney's Office


*Native Village of Unalakleet and Elim v. U.S.D.A Rural Utilities, et al.*
Case No. 3:24-cv-00100-SLG                    11